IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                        CR. No. 00-1425 JAP

JAMES LEE BELL,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On June 25, 2020, Defendant James Lee Bell (Defendant) filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[1] On July 2, 2020, the United States (Government) responded[2] and on July 15, 2020, Defendant replied.[3] On August 20, 2020, Defendant filed an appendix to his Motion, and on September 7, 2020, Defendant filed a second appendix to his Motion.[4]

After reviewing the briefings and appendices, the Court will deny the Motion.

## FACTS

On October 27, 2000, a federal grand jury indicted Defendant on four counts: Count I: Possession with Intent to Distribute Less than 50 Kilograms of Marijuana in Violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); Count II: Possession of a Firearm in Furtherance of a Drug Trafficking Crime in Violation of 18 U.S.C. § 924(c)(1)(A)(1); Count III: Transportation in Interstate Commerce of a Firearm with an Obliterated Serial Number in violation of 18 U.S.C. §

---

[1] *See* JAMES LEE BELL'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(B)(1) OF THE FIRST STEP ACT (Doc. 82) (Motion in text, Mot. in citations).
[2] *See* UNITED STATES' SEALED RESPONSE TO DEFENDANT'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(B)(1) OF THE FIRST STEP ACT (Doc. 85) (Response).
[3] *See* AMENDED REPLY RE MOTION FOR COMPASSIONATE RELEASE (Doc. 87) (Reply).
[4] *See* SUPPLEMENT TO COMPASSIONATE RELEASE MOTION (Doc. 89) (Suppl.); SECOND SUPPLEMENT TO COMPASSIONATE RELEASE MOTION (Doc. 91).

922(k) and § 924(a)(1)(B); and Count IV: Transportation in Interstate Commerce of a Stolen Motor Vehicle in violation of 18 U.S.C. § 2312.[5] Pending trial, Defendant was released to a halfway house. Order (Doc. 11). Subsequently, in February 2001, Defendant absconded from pretrial supervision. *See* Minute Order (Doc. 37). While a fugitive, Defendant carjacked a car and shot and killed the owner. By March 2001, he was back in custody.

After the Defendant waived indictment, the Government filed an Information, which dropped all charges but Count II, and added two additional charges: Carjacking Resulting in Death in violation of 18 U.S.C. § 2199(3) and Discharge of a Firearm During and In Relation to Crime of Violence in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 924(c)(1)(C)(i). Under the Sentencing Guidelines, Defendant faced a guideline range of 684 to 765 months. Resp. Ex. 1 (Doc. 85-1) ¶ 84.[6]

On November 2, 2001, Defendant entered into a Plea Agreement under Federal Rule Criminal Procedure (Rule) 11,[7] which stipulated a sentence of four hundred forty-four months (444) or thirty-seven (37) years (Doc. 65).[8]

Sometime after Defendant began serving his sentence, he developed several medical conditions, which include myasthenia gravis, severe hypertension, cervical spondylosis, and anxiety disorder. Mtn. (Doc. 82) at 2. Currently, Defendant is serving his sentence at FCI Butner II in a level 3 care facility.[9]

---

[5] *See* INDICTMENT (Doc. 19). The Government superseded the Indictment on July 10, 2001. *See* SUPERSEDING INDICTMENT (Doc. 51).

[6] Probation determined that under the United States Sentencing Guidelines, Defendant had a level II criminal history and a level 40 total offense level. Resp. Ex. 1 (Doc. 85-1) ¶¶ 45, 50. Under the Guidelines, Defendant faced a potential sentence of 684 to 765 months. *Id.* ¶ 84.

[7] The language of the Plea Agreement cites Rule 11(c)(1)(E), which was later amended to Rule 11(c)(1)(C).

[8] *See* PLEA AGREEMENT (Doc. 65) (PA). The PA stipulates that the Defendant and the United States agreed that an appropriate sentence was sixty (60) months for Count I, eighty-four (84) months for Count II and 300 months for Count III with all three terms to be run consecutively.

[9] Defendant describes Level 3 care inmates as who "are fragile outpatients who require clinical contacts to prevent hospitalization for catastrophic events. They may require some assistance with activities of daily living, such as bathing, dressing or eating, but do not need daily nursing care." Mtn. (Doc. 82) at 3 (quoting Alan Ellis, Federal Prison Guidebook § 7:10 Medical & Mental Health Care.

Defendant has served 232 months of his sentence and earned credit for approximately thirty additional months. He has served over 58 percent of his sentence. The Bureau of Prisons (BOP) calculates his projected release date as January 24, 2033. See Mtn. (Doc. 82) at 2.

On February 28, 2020, Defendant asked the LSCI Butner Warden for compassionate release. Mot. Ex. B (Doc. 82) at 36. On March 13, 2020, the warden denied his request. *Id.*

## APPLICABLE LAW

After a court has imposed a sentence, it may modify the sentence only on the narrow grounds delineated in 18 U.S.C. § 3582. One avenue for modification is "compassionate release." Until the First Step Act of 2018 (FSA) was enacted on December 21, 2018, only the BOP could review an inmate's request for compassionate release. *See* FSA, PL 115-391, December 21, 2018, 132 Stat. 5194. The FSA amended § 3582(c)(1)(A) to permit an inmate to bring a motion in federal court. The inmate may file a motion only after "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A); *see also* FSA, § 603(b)(1).

Two circumstances permit a court to modify a term of imprisonment under § 3582(c)(1)(A). The one applicable here, § 3582(c)(1)(A)(i) indicates that compassionate release is established when "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).[10] The Guidelines policy statement for compassionate release is in § 1B1.13. U.S.S.G. § 1B1.13 (U.S. Sentencing Comm'n 2018).

---

[10] A defendant also may be eligible for compassionate release under § 3582(c)(1)(A) (ii) if "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community as provided under section 3142(g)." Defendant does not argue that § 3582(c)(1)(A)(ii) is applicable here.

The text of § 1B1.13 provides that a defendant must show three things to establish his eligibility for sentence modification: 1) "extraordinary and compelling reasons;" 2) the defendant "is not a danger to the safety of any other person or to the community;" and 3) and "the reduction is consistent with this policy statement." §1B1.13(1)-(3). The application notes for § 1B1.13 offer four definitions of "extraordinary and compelling circumstances." § 1B1.13 cmt. n.1(A)-(D). Defendant relies on the definition found in 1(D), "Other Reasons."

Under 1(D), compassionate release may be appropriate for "an extraordinary and compelling reason other than or in combination with, the reasons described in subdivisions (A) through (C)."[11] *Id.* cmt. 1(D).

## ANALYSIS

On February 28, 2020, Defendant filed a request with the BOP for compassionate release based on his medical condition.[12] On March 13, 2020, the BOP denied that request. On June 25, 2020, Defendant filed his Motion with this Court. The Government argues that this Court lacks jurisdiction to modify Defendant's sentence under 18 U.S.C. § 3582(c)(1)(A) because Defendant has not complied with the statutory requirement that he exhaust "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." § 3582(c)(1)(A). According to the Government, the statute's language mandates that a defendant exhaust all appeal rights with the BOP system, which Defendant did not do. The Defendant counters that the language of the statute does not support the Government. The Court agrees with Defendant.

---

[11] The other three categories are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; and (C) Family Circumstances.
[12] This was Defendant's second request. Defendant filed a first request in March 2019, which the warden denied that same month. Mtn. (Doc. 82) at 10.

After a defendant brings a request to the BOP, the statute sets up a disjunctive condition that a defendant must meet before bringing a motion to federal district court. A defendant must either exhaust "all administrative rights to appeal" the warden's failure to bring a compassionate release motion on his behalf, *or* a defendant may bring a motion after the "lapse of 30 days from a receipt of such a request . . . *whichever is earlier*." Here, more than 30 days after Defendant brought his request to the BOP, he filed his Motion with this Court.

The Government then asserts that because Defendant did not raise COVID-19 as a factor for compassionate release, Defendant is barred from raising it as a factor here. Defendant's BOP request argued that his "serious health issues" favored release.[13] The Government correctly observes that Defendant did not mention COVID-19. While Defendant did not mention COVID-19 in his request—he could not, as it had not yet been declared a pandemic—its existence just provides further support to Defendant's original allegation that the BOP cannot effectively manage his serious health conditions. COVID-19 is a communicable disease, which along with other communicable diseases, is uniquely dangerous to Defendant because of his one or more chronic medical conditions. In sum, Defendant's substantive position has not changed, he has just specified a potential threat to his health. Defendant's Motion is properly before the Court.

Next, the Government contends that Defendant has not met his substantive burden. A Defendant is eligible for compassionate release when a defendant shows: 1) extraordinary and compelling reasons that are consistent with the policy statement; and 2) the defendant is not a danger to the safety of any other person or to the community.

---

[13] It is unclear if Defendant's request is a request for a reduction in sentence based on FSA changes to guideline ranges or if it is a request asking for compassionate release. Defendant argues that it is the latter, and the Government does not contest this point, so the Court will accept Defendant's assertion.

### A. Extraordinary and Compelling Reasons Consistent with the Policy Statement

The Government argues that Defendant has not shown extraordinary and compelling reasons because 1) the BOP has a system in place to minimize the risk to inmates exposed to COVID-19; and 2) Defendant's medical conditions are not serious conditions that substantially diminish Defendant's ability to provide self-care within the BOP. In support of its argument, the Government provides a lengthy list of the measures the BOP has taken to minimize the risks, such as limiting contractor access, suspending visits and tours of the facility, and screening inmates and staff for infection. The BOP also places symptomatic inmates in insolation until they test negative or are cleared by medical staff. In response, Defendant questions the adequacy of the BOP's measures and argues that the Government has not demonstrated how BOP's measures will minimize the risks to Defendant with his specific medical conditions. The Court agrees.

While the BOP's efforts are laudable, they do not address the special risks associated with certain medical conditions, including Defendant's myasthenia gravis and hypertension. According to the CDC, any condition that results in an individual being immunocompromised makes an individual at an "increased risk for severe illness from COVID-19."[14] While there is limited information about hypertension, the CDC states that information suggests that those with hypertension "might be at an increased risk for severe illness" from COVID-19.[15]

The Government asserts that the BOP does make special provisions for those with chronic conditions through home confinement, and that Congress amplified the BOP's ability to direct qualified inmates to home confinement through the CARES Act. While the CARES Act provided the BOP with greater discretion to release inmates into home confinement for extended lengths of

---

[14] *See* Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people with medical conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited September 10, 2020).
[15] *Id.*

time, the BOP's procedures severely limit the inmates that may be considered for the program. Many, including Defendant, are ineligible under its guidelines. *See* Reply, Attach (Doc. 87) at 20.

Moreover, the Government's argument that home confinement is an adequate substitution for compassionate release is weakened by the fact that the FSA modified the Compassionate Release statute because the BOP rarely approved such requests. FSA, § 603(b)(1) (subtitle indicating that it is intended to "increase[e] the use and transparency of compassionate release."). The Government has proffered no evidence that the BOP has granted more compassionate release petitions after the FSA than before. Accordingly, the FSA gives inmates a second avenue for relief through the district court.

For the same reason, the Government's argument that the Court should defer to the BOPs guidelines concerning compassionate release is unpersuasive. Those guidelines precede the FSA and have not been updated since its enactment. Moreover, the Tenth Circuit has suggested that the BOP Policy Statement is helpful to the Court and is entitled to "some deference" but is not controlling. *See United States v. Saldana*, 807 Fed. App'x 816, 819 (10th Cir. 2020) (citing *Reno v. Koray*, 515 U.S. 50, 61 (1995) for its "holding that BOP program statements are entitled to 'some deference' when they reflect a 'permissible construction of the statute.'") (further citations omitted)).

Next the Government argues that the existence of a pandemic, in this case COVID-19, cannot on its own demonstrate an extraordinary and compelling reason for compassionate release. The Court agrees. But the fact that COVID-19 is a pandemic and that it along with other diseases may pose a unique risk to inmates with certain medical conditions, does establish an extraordinary and compelling reason. The Court concludes that Defendant has met his burden and has shown that his specific medical conditions establish extraordinary and compelling reasons for compassionate release.

### B. Danger to Society and the § 3553(a) Factors

Before reducing or modifying a defendant's sentence, a court must consider both whether a defendant is a "danger to the safety of any other person or to the community" and the information the court considered prior to a defendant's sentencing. Factors that may be helpful to the Court in its analysis include: the nature and circumstances of an inmate's offense, the inmate's criminal history, the length of the sentence and time served, the inmate's current age, the inmate's age at the time of offense and sentence, the inmate's release plans, and whether release would minimize the seriousness of the offense. *See* Federal Bureau of Prisons P5050.50, Compassionate Release Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) 2019 (Policy); 18 U.S.C. § 3553(a). Defendant argues that while in prison he has improved himself through educational classes and by vocational training.

The Court agrees that Defendant has had many significant accomplishments while in prison. The following factors weigh in his favor. He has educated himself by taking courses. Mtn. Attach. C (Doc. 82) at 38. He has worked to improve his vocational skills. Mtn. (Doc. 82) at 29. He has a workable reentry plan and support from his family. *Id.* at 30; *see also* Attach E (Doc. 82) at 42-51 (letters from family); and Suppl. (Doc. 89) (additional letters). But other factors indicate that Defendant has not completed his rehabilitative process.

While in prison, Defendant has had several disciplinary infractions which have resulted in the loss of over 75 days of earned good time credit. *See* Resp. Ex. 6 (Doc. 85) (listing eight disciplinary violations). Many of these infractions include allegations that Defendant used some form of illegal substance. Significantly, the most recent disciplinary proceeding happened in April of this year and resulted in the loss of 41 days of good time credit. *Id.* Defendant's difficulties in complying with the BOP's rules and regulations undermine his argument that he would not be a danger to the safety of any other person or the community.

Other factors also weigh against Defendant. His crime was violent and resulted in a man's death. Additionally, two of the crimes to which he pled guilty occurred after he had absconded from federal custody for separately indicted crimes.

Moreover, Defendant agreed to a term of months below the Guidelines suggested range. Defendant argues that if he were sentenced today, he would receive a lesser sentence, because at the time the Court sentenced him, sentences for 924(c) crimes could be stacked, but stacking is prohibited now. According to Defendant, the applicable Guidelines range today would be as much as 15 years or 180 months less. But this argument ignores both that Defendant agreed to a term of 444 months (37 years), and that the term was approximately 36 percent or 20 years less than the lower end of the then applicable Guideline range of 684–765 (57 to approximately 64 years). His sentence, in other words, already was more than fifteen years less. Moreover, it is impossible now to ascertain the intentions of either Defendant or the Government when they agreed to the sentence of 444 months or what they would have agreed to under today's Guidelines.

Defendant has served approximately sixty percent of his sentence. Releasing Defendant now would minimize the seriousness of his offense and would result in disparate treatment from similarly situated defendants. The 18 U.S.C. § 3553(a) factors counsel against granting Defendant's Motion.

IT IS ORDERED THAT JAMES LEE BELL'S EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(B)(1) OF THE FIRST STEP ACT (Doc. 82) is DENIED.

*James A. Parker*
SENIOR UNITED STATES DISTRICT JUDGE